May it please the Court, I am Robert Freitas, and I represent the appellant. I'd like to reserve five minutes for rebuttal. The district court's dismissal of Nitchin's complaint was based on issue preclusion, which the parties in the court referred to as collateral estoppel. That means that reversal is required unless there is a final order addressing an identical issue that was actually litigated and necessary to the decision. Now, in explaining its issue preclusion ruling, the district court identified the identical issue as something that wasn't involved in the prior proceeding. The district court said that the identical issue was whether the arbitration counterclaims, those counterclaims asserted by Secugen in arbitration, were subject to mandatory arbitration. No such issue was ever before the State court. And we do not believe that Secugen seeks to defend the district court's issue preclusion ruling by contending that the issue the court identified was before the State court. Indeed, Secugen appears to deny that the district court meant what it said when it referred to the counterclaims having been before the State court. Apart from the many motions, this is also a case of many claims and two different agreements. So I just have one fundamental question maybe you can help me with. Do I understand your position to be that the case is moot as to some of your claims? Yes, Your Honor. And that is only the ones that you lost? No, Your Honor. It's moot with respect to the ones we won. I'm sorry, the ones I looked around. That's right, Your Honor. In other words, the ones that you win, it's moot because you want to take those claims and go home. And the ones you lost, you want us to figure out whether all these various procedural mechanisms apply or don't apply. Is that correct? Yes, Your Honor. That's the way to put it. So I'm like puzzling to myself. If one of the questions has to do fundamentally with whether the arbitrator had authority or didn't have authority, why is it that you can pick and choose that if you win some, you take them, and if you lose some, you don't take those? I mean, how can you pick and choose from the arbitrator's authority? That's what I'm trying to understand as a conceptual matter. There are two points there, Judge McKeown, and there are two different ways to look at it. The first is we made no voluntary choices going into the arbitration. What happened was forced on Nitchin. It was not voluntary. To say later that we're stuck with something we never agreed to, accepted, moved forward with on our own is quite harsh. But, Counselor, it's not the non-stuck part that Judge McKeown was asking about. It's the part that you say we're pleased to be stuck. And the question is how can you take that position when you're challenging the ability of the arbitrator to decide the issues at all? Because our opponents are stopped to contend otherwise, Judge Shader. They advocated what they're accusing us of having advocated. They said that the arbitrator has the power. We disagreed with that and we made our objections from start to finish. They lost. It's not open to them to question the arbitrator's authority. As we stand before the district court, we seek confirmation they're not in a position, because they clearly did, affirm the arbitrator's jurisdiction to contest it. No, but if the arbitrator doesn't have the authority, I just don't see how you ‑‑ It's a question of you taking irreconcilable positions on that point. It seems to me you kind of got to rise and fall with all your claims one way or the other. I don't know how they might turn out. But if it's not just moot as to part of them, I just don't see any legal basis for that. Your Honor, the reason ‑‑ then you say, well, okay, guys, you think there's authority? You have to kind of live with the bad side of this. That would be okay. It's just that if the arbitrator had authority, then they ought to be able to get both the up and the down side. They didn't sort of bifurcate their acquiescence or their position on the arbitrator's authority. Your Honor, a case like this one brings the point that you're making to the fore, because we won almost everything. We did. And your Honor is suggesting that we have to take the victory we won on virtually everything. We have to give up rights that we preserved on the others. Now, in this case, maybe that seems okay because we did do very, very well in the arbitration. But in another case, it might not be so cut and dry. If things came out a little closer to even, or if we only won a few things, to say that we would have to surrender our right to challenge the deprivation of our right to be in court is very harsh. And it's when the balance is different than the balance is here. Well, see, I'm not really doing it based on how many you won or lost. I mean, that's not entering into my mental calculus. I'm just trying to conceptually figure out your ability to take that position, and it doesn't reflect on your absolute, you know, actually pretty good success in the arbitration. Let me try it another way, Your Honor. The traditional framing of waiver refers to the voluntary relinquishment of a known right. We did not go before the arbitrator voluntarily. We were dragged kicking and screaming. And to this day, we point out the reasons why we didn't belong there. Now, to say that after we resisted it and preserved our rights, we have the Hobson's choice of saying we'll take the loss to stand behind our position on whether we belonged in arbitration is asking us to do a lot. In the cases that the parties have cited, there's nothing like this, other than the couple of cases that we found that only tangentially addressed the problem. The other cases where waiver was found, they all involved an affirmation of the power of the arbitrator or a clear failure to preserve a party's position. Counsel, might we talk forfeiture instead of waiver? There's an unfortunate tendency in all the cases to use the term waiver in kind of a loose way precisely because it talks about a willingness, a voluntary aspect. More accurately, most of the cases are really dealing with forfeiture. That is the idea that a party loses something by reason of something else in the case. And in this case, the question is whether you lose something by reason of having affirmed the arbitrator's power  Your Honor, the idea that we affirmed, we certainly took an action that said we were forced into this proceeding. We spent a lot of time, a lot of money. We won. We want the benefit of that. We did that. There's no question we did that. The idea that that carries with it, and that's how I think about forfeiture, Your Honor, the idea of you do something, there's a consequence. The idea that accepting what we were forced to accept carries with it the loss of the rights that we've asserted is something that I don't think there's a case that supports that, Your Honor. I understand the reasoning, but they haven't cited a case, and we certainly didn't find one, that said we cannot, to use Judge McEwen's phrase, take the good and not take the bad. We haven't seen anything that says that. It's relying on the concept of estoppel, I think, is what you told me. In one sense, we are, Judge Trott, because they're clearly estopped. They can't say that the arbitrator lacked the power. They said that she had the power. So there's no issue there. When we go before the district court and we request confirmation, the other side can't say, wait a minute, the arbitrator lacked power. They are clearly estopped. I think there's no doubt about that. And I guess the question is, can you go there and ask for ‑‑ it's kind of like bifurcating. You know, the only comparable things we have is to think of it in a more federal court terms, although I realize it's an arbitration, but it's like you're bifurcating the judgment in a way, and you're saying, I just want these claims, I just want to confirm these claims, and I, by you confirming these claims, I basically, you have to be estopped as the arbitrator. And that's what it would have to be, Your Honor. I'm just trying to think of, you know, how the judges are going to look at it. But one other way to look at it, one other way, Your Honor, that might be a little closer is to look at the case that we cited where a party was ordered into arbitration, preserved its rights appropriately in arbitration. This is the one where the party won but didn't get as much as they wanted. So they went to arbitration. They did receive a positive result. They came out of arbitration. They went to district court. Now, the opponent said, you should have moved to vacate. But what they did instead is they moved to confirm, and then on appeal, they raised the issue of the arbitrator's power. Now, in that case, it could be said that they affirmed the arbitrator's power every bit as much as we did, if not more, because there wasn't a split in their case between things where they prevailed and they were accepting it and things where they lost and they were challenging it. Flat out, they said, we petition to confirm. And they were able on appeal to raise the issue of the arbitrator's power because of their prior actions in which they preserved their rights. In the prior proceeding, they properly opposed. They ended up in arbitration, but they hadn't forfeited their rights. When they came out of the arbitration, so even though they petitioned to confirm. Just if I recall that, and help me out, because you're more familiar than I am with that, you didn't have a situation where you had the multiple claims in that case, and you were trying to parse power between some claims and not others? That's true, Your Honor. I suggest it was worse because they went all the way. They moved to confirm, period. So they didn't hold back on anything until the district court entered the judgment with which the party was not completely satisfied. And on appeal, even though it had done something that at least is analogous, if not beyond what we did, even though that happened, that party was permitted to contest on appeal the authority of the arbitrator. And then what happened to the level of success that they had acquired the first time around? I don't remember if they shot themselves in the foot, Your Honor. I don't recall what the result was. But isn't that really necessary in order to make an effective comparison? I'm not sure it is, Your Honor, because in this case, whereas they were unhappy in part with the result on the claim where they prevailed, we're unhappy on the trademark injunction dispute and the free speech dispute with that result. And I think if it was okay for that party to seek confirmation, get confirmation, and then litigate the arbitrator's power on appeal, I think that it's at least analogous to what we have here, if not something where that party's position went beyond anything we did. But with respect to the other issues in the case, with respect to how we decide the appeal, two basic issues are here. Was there a final adjudication? Was there an identical issue? And because of the way the issues hit in this case, I think it's helpful to focus first on was there an identical issue. Well, counsel, before we get to that, I did have what is really a threshold question. That is, you're seeking, are you not, to attack the state court determination in that respect, right? We wouldn't know, Your Honor. We're not. Whatever the state court did, the state court did. We're not seeking to attack it. The state court certainly made some statements with which we disagree. But the relief we sought in the district court has no effect on anything that the state court did. Even the determination of arbitrability on the one contract? No, Your Honor, and the reason for that is that the state court acted with respect to our embezzlement claim and our collection claim. The state court decided those went to arbitration. That is an issue, is it not, here? It is not, Your Honor. Because those two claims, the embezzlement and the collection, were never before the district court. They are part of what is before the district court on confirmation because we won. But with respect to the proceeding that is involved in this appeal, the only claims are the SecuGen counterclaims. Those were never before the state court, and the claims that were before the state court were not before the district court. And that, Your Honor, by the way, is why the district court was wrong when it identified the identical issue. The district court said it's the arbitrability of the SecuGen counterclaims. Those were never before the state court. Now, with respect to whether SecuGen defends the district court's identification of the issue, we don't believe it does. We think they're focused on the other issue, claiming that there was an adjudication in the state court on the, what Justice Breyer called a type three issue in first options, who decides arbitrability. Now, the only challenge I think we have there has to do with what happened. We don't believe we're challenged on the effect of inconsistent determinations. We don't believe they disagree with us, that an inconsistent determination is not entitled to issue preclusions. We don't believe it has a conclusive effect. They did make a passing suggestion that the inconsistency rule is limited to what they called the jury verdict cases, but Judge Trott's opinion in Appling, which involved a contract, makes it clear that they're wrong about that. And that was an issue that Judge Shader addressed also in Hudson against Allstate, also involving a contract. It wasn't the holding, but in footnote 8 in that opinion, Judge Shader alluded to the fact that inconsistent determinations aren't entitled to preclusion. So the question then is where do we stand on that? Is there inconsistency in the order? We think it is patent. If you look at the motion that SecuGen filed, they asked the state court to hold our claims to be substantively arbitrable. They said in the excerpts we cited on page 13 of our opening brief, they said that our claims fell within the scope of the arbitration clause. Arbitration clause in which agreement, the licensing production? Licensing agreement. That was the only one that was before the state court. The other one was not there. The other one was not. The EAS, for lack of a better word. Correct, Your Honor. But I have to say that the IBAS issues, those are moot. We are no longer contesting on that ground as a result of what happened in the arbitration. So we shouldn't spend our time, at least as I did, trying to figure out which of these were IBAS or LPSA or whatever you call it based. The only one that was IBAS had to do with a copyright claim, I believe, Your Honor, and that's no longer alive. IBAS is not part of the case at this point. Only LPSA. Coming back to the question I had asked earlier, you are questioning the state court's determination with respect to the matter of issue preclusion, are you not? You are saying they were wrong on the issue of preclusion? Well, that the district court was wrong on issue of preclusion, Your Honor. The state court made no issue of preclusion ruling. Okay. So, but beginning in the excerpts of record on page 41, you can see the motion that SecuGen filed. It was a motion for a substantive determination. And on pages 166 and 167 in the excerpts of record, in the state court's motion, it was a motion for a substantive arbitrability determination. In the state court order, it is quite clear that a substantive arbitrability determination was made by the state court. We focused on the Izzy case that the state court discussed. The Izzy case quite clearly is a substantive arbitrability case. The issue in the trial court was whether the claims fell within the scope of the clause. The issue on appeal was whether the court had erred in concluding they did not. And the holding in the Izzy case was that the claims fell within the scope of the clause. On page two, excerpts of record 167, the state court relied on the Izzy case to conclude that our tort claims fell within the scope of the arbitration clause. That's a substantive arbitrability determination. And anything else the court said, the state court did not do it, was inconsistent with the court's assumption and exercise of the power to resolve those important questions. Because of that, we had to litigate our tort claims in arbitration instead of before a jury. Because of that determination. Yes, the court also said the claims fell within the scope of the arbitration clause. And the state court decided that all of those matters are arbitrable. No, Your Honor. What the state court decided was that the embezzlement claim and the collection claim were all arbitrable. And the state court decided that the collection claim and the embezzlement claim were all arbitrable. Those are not before the district court in this case or relevant in that sense on this appeal. The state court never considered anything other than the collection claim, the embezzlement claim, and then in the declaratory judgment proceeding, in a passing way, the assault and battery claims by Mr. On. This case, the live claims, involve the trademark injunction, the assault and battery claim, the embezzlement claim, the assault and battery claim, and the free speech injunction. Those matters were not before the state court at all. The state court never considered them. Those are the two issues that you want to pursue in federal court, trademark and free speech. Yes, trademark and free speech, Your Honor, that's right. And cause of action wise, those fit in as they're subparts of the first claim for relief we pleaded in district court, which was the one where we said it's the court, not an arbitrator that decides. Those are subparts of that. And then in addition, on the second claim for relief, we asserted that claims were not arbitrable, so those issues are still alive. And then in our third through ninth claims, we asserted non-liability. But for purposes of this appeal, the focus is on our first claim, because that's the one where they said that we were barred by issue preclusion. That's the one where we said it's a court, not an arbitrator. And that's the one where they say, look at the state court's order on page three. It says that an arbitrator decides, not a court. We say, look on page two at what the state court said, which is just the opposite of that. So if I might return you to the first point that you began with, suppose we were to decide that you've got to take the bitter with the court. And you may regard this a Hobson's choice, but what would your position be? Your Honor, given the great success we had in the arbitration, there's no other choice we could make other than to take the benefit of that. We were sued for $43 million, and we defeated the claim. We recovered a net $3.3 million. We got an embezzlement determination. So you're saying you take the package instead of rejecting the package? Your Honor, if that's where the chips fall, that's the choice that we'd have to make. And we submit that we shouldn't have to make the choice, but that's my answer, Your Honor. Good morning. May it please the Court, my name is Maria Shadid, and I represent Apali Secogen Corporation. I'd like to begin by clarifying the record of what's happened here. This is the no-spin zone, go ahead. I appreciate that. What happened is after extensive briefing and oral argument in the state court, the state court decided two things. One, that there is an arbitration agreement between these two parties. It exists. In one of the agreements. Yes, that's correct. And my understanding is that the I-BAS is off the table now, so I won't address that unless you want me to. But that's addressed in our briefing, I-BAS. Now, under the LPSA, an arbitration agreement exists. Under California law, Judge McKinney recognized that that means he was required to compel arbitration. Now, Nitchin objected that certain claims asserted by the I-BAS could not be used against the state court. They were not within the scope of that arbitration clause. And on that issue, there was lots of briefing, even supplemental briefing. And Secogen took the position that under first options, there was an unmistakable delegation of the authority to decide arbitrability, and that delegation was to the arbitrator. So it does not rest with the courts. That's for the arbitrator to decide. Judge McKinney agreed. So he said, we have an arbitration agreement. I must send you all to arbitration. To the extent you dispute whether any particular claim falls within the scope of that agreement, I rule that the party is intended for the arbitrator to make that decision. That's what happened in the state court. And the arbitrator did. And she did. And she said everything is within arbitration. And therefore, I decide all this, and they win a bunch of money. Well, Your Honor, there are differences in opinion about what happened in this arbitration. And, in fact, I'm not surprised. In fact, Mitchin specifically requested that the arbitrator allow them to call themselves the prevailing party. They wanted to advertise this. And the arbitrator issued a ruling saying, you are not the prevailing party. I don't know how you could say anyone in this arbitration is the prevailing party. She recognized that she did what most of us refer to as splitting the baby in the arbitration. Now, let me go back to what happened here. After we get our state court decision, Mitchin relitigated that same issue to whom the authority to decide arbitrability was delegated. That very same issue was Claim 1 before Judge Ware in their federal court complaint. Okay. So they relitigated that issue, effectively seeking federal court review of the state court decision. And that's improper. Judge Ware gave collateral estoppel effect to Judge McKinney's decision on the delegation issue. And opposing counsel suggests that Judge Ware was confused, that he didn't understand that that's what Judge McKinney had decided. That's incorrect. Could I ask a question? You're saying that although counsel had indicated otherwise, that what they're seeking is to challenge the state court determination? In federal court. That's what they sought to do, yes. Why isn't that Rooker-Feldman rather than issue preclusion or any other matter? Why doesn't that take it out of the ambit of what a federal court is supposed to do as a jurisdictional matter? We would agree that there are probably numerous doctrines under judicial... Rooker-Feldman. We don't sit as an appellate court over state court decisions. We argue in our brief that it is improper for a we don't call it the Rooker-Feldman doctrine, but we do argue... Improper? I mean, Halloween improper? We cite a case in our brief that says you may not seek review, that that is a well-settled doctrine, long-existing doctrine, that you may not seek federal court review of a state court judgment. And that's jurisdictional, isn't it? Yes, it is jurisdictional. Well, does that stop the whole works? We would agree with that, Your Honor. Well, before you jump to that conclusion, we've had a fair amount of discussion in the circuit on the difference between Rooker-Feldman and collateral estoppel. And it might end up in the same place. But if I read their first claim for relief on declaratory judgment, it doesn't seem to me that they're actually challenging the authority of the court or they're not asking to undo the state court decision. Instead, they're asking that a declaratory judgment that this issue, these issues that are arbitrable should be by the court, not the arbitrator. Isn't that really just collateral estoppel that we would invoke? Because they're not really seeking to upset. They might disagree with it, they want a different decision, but they're not asking to undo the state court decision. They're simply asking the federal court to make a decision on which collateral estoppel. We think this is one single indivisible issue. Under the case of first options, the U.S. Supreme Court addressed the framework for the analysis of this question of who decides arbitrability. And there the court says it either rests with the courts or the party is unmistakably delegated to the arbitrator. Whether you're talking about a claim, a counterclaim does not matter. And that's true for issue preclusion as well. We cite the ---- I'm just saying that it seems to me this isn't a Rooker-Feldman issue. It's a claim preclusion issue because they have their declaratory judgment and you say, oh, wait a second, that was already decided over here. It can't be re-decided. We think it more squarely fits within collateral estoppel. However, the same policies underlying Rooker-Feldman apply here. And if I may just continue with the history that leads to why this is all moot. Judge Weir gave collateral estoppel on the delegation issue. He was very aware of what Judge McKinney decided. If you look at his decision, he states Judge McKinney decided there was an agreement to arbitrate and that delegation was ---- the delegation on the question of arbitrability was to the arbitrator. He made that very clear. Now, we went through the arbitration after that. Arbitrator, as we noted earlier, decided that all the claims are arbitrable. We had a one-month hearing on the merits. There was extensive pre- and post-hearing briefing. The award was issued, and now Nitchin has moved to confirm portions that it likes, including, and this is important, including claims that the arbitrator determined were arbitrable. So she exercised that authority to determine they were arbitrable, and now they're moving to confirm those very same claims. And in their words and in their conduct, they've now forfeited the right to challenge that any further. And when I say their words, I refer to their filing before the district court where they represented to the district court that there's no basis for vacating the award on those claims that they like and are moving to confirm on. That representation is at Exhibit 4 to Secuchan, 2nd RJN at page 4, lines 27 to 28. By telling the court there's no basis to vacate, they're saying the arbitrator acted within her jurisdiction. And indeed, a district court cannot affirm an award if there's a jurisdictional defect. Once it confirms it, it puts a stamp of approval on it. That means this is a valid award that was issued within the full authority of the arbitrator. Now, once that's done, Nitchin cannot continue to stay on jurisdictional grounds. Well, on the claims we don't like, we still think the arbitrator did not have jurisdiction. It's just not divisible that way. It's one issue. Either that power was delegated to her or it was not. And, again, I refer the court to the framework in first options. I think it's very helpful on how this has only one of two answers, either the court or the arbitrator. And even in Claim 1 of their federal complaint, that's how they pose the question, one single claim as to arbitrability generally. And they say there that that power rests only with the courts, not parties. I'm trying to carve out trademark and free speech. Specifically, what's your answer to that? We say it's all moot first, okay, because as I said, it's indivisible. You can't, as the court has already noted, pick and choose. You just can't do that. And you also, under the Ninth Circuit decisions that we've cited, including power agent, a litigant cannot benefit by making contradictory arguments about the arbitrability issue. So in other words, would you agree that if they didn't want to pick and choose, they could simply come in and it wouldn't be moot if they were to challenge the arbitrability issue anew, but then, of course, we would have to go through all the substantive hoops to figure out if they could. It just wouldn't be moot if they didn't try to split it. If they could come in without mooting their claim, if they put the whole ball of wax on the table. If they wanted to continue to challenge arbitrability power as to everything, then that brings us to collateral estoppel and whether Judge Ware made the right decision on collaterals. We then have to go to collateral estoppel. That's right. You're saying, though, we might not have to get to collateral estoppel if the whole thing is moot. Yes. Which causes them, in effect, to make an election. That's right. Which, at least at this point, the election they would make would be to sit tight and not to split their thing. But, okay, so proceed now with collateral estoppel. And are you stuck with the same election? I believe we are, Your Honor. Yes. Now, but I think it doesn't matter for us because I think we went on collateral estoppel and our alternative grounds. I want to ñ I need to make one note about the Metro Bank case that was referred to by opposing counsel. And that case, first of all, is an out-of-circuit, unpublished decision. But beyond that, it's wholly an opposite and wholly different from what happened here. You know what? I don't think we should hear about it because, as I understand the Seventh Circuit rules, it shouldn't have been cited. That's correct. And I don't think it's appropriate to have that in the Ninth Circuit. Well, the Seventh Circuit rule is funny. It says it can't be cited before them. Them. I understand that. But we run into all this all the time. I just don't think we should use unpublished, uncited decisions as precedent. I raise it only because that's the case that opposing counsel was relying on. Let's cut to the chase. Okay. How do you think we ought to resolve this case? And then tell me exactly why you think that. Okay. What do you want us to do? I think, number one, the entire case is moot. They cannot take ñ How much do you want us to hold? It's moot. The entire case is moot. Right. Number two, Judge Ware did not abuse his discretion in applying collateral estoppel here. He was exactly right. And, in fact, this is a very straightforward case of collateral estoppel. And if I may address the reasons why. First, we have the same issues. That's undisputed. I'm sorry. We have the same parties, and that's undisputed. We have the same issue. On page 50 ñ 40 ñ I'm sorry, 59 of Nitchin's opening brief there, Nitchin agrees that the same issue of delegation of authority to decide arbitrability is before the state court and federal court. That's in their brief, their opening brief. Now, what they say is different are the claims. And at page 46 of our brief, we explain that it's black-letter collateral estoppel rule, that differences in claims have no bearing on the collateral estoppel analysis. And, in fact, the cases we cite there say it's very common for parties to assert different claims and different actions, but collateral estoppel still applies because this is issue preclusion. Okay. Now, then we go to the third requirement, requisite finality. And here, Southeast Resources is squarely on point. That's the decision of the Ninth Circuit on which Judge Ware relied. That conclusively establishes that an order compelling arbitration is given collateral estoppel effect under California law. It also conclusively establishes that what is meant by an order to compel arbitration is either a grant of a motion to compel arbitration or a refusal to enjoin arbitration. The court explains very clearly there, there is no difference. It doesn't matter what you call the order. It's entitled to collateral estoppel effect because it has the same effect. Whether a party brings it in the form of compelling arbitration or asks the court can you enjoin the arbitration, same thing. So all these arguments about whether the collateral estoppel effect was given to the part of Judge McKinney's award that refused to issue an OSC on the preliminary injunction or refused to issue a TRO or whether it was in the part of the award on the motion to compel, it's all irrelevant. Southeast Resources is squarely on point. And as we point out in our briefs, Nitchin cannot re-argue Southeast Resources to this court as they attempt to do. So there's no serious argument here on application of collateral estoppel. And we hear that Nitchin says Judge McKinney was confused, he was inconsistent, that Judge Ware was also confused, that he made mistakes, that this court erred in deciding Southeast Resource. We submit that these are all tortured and baseless arguments to muddy what are very crystal clear waters on collateral estoppel. I'd like to note that arbitrator Abraham also heard these arguments. And when she found Nitchin liable in the amount of $734,000 in damages, for abusing the judicial process, this was a claim that Zekagin brought against Nitchin in the arbitration. She found them liable. And in doing that, she explained there was no confusion or inconsistency in the orders of Judge Ware or Judge McKinney. Arbitrator Abraham states that paragraph 115 of her partial final award, and that partial final award is attached as Exhibit A to Nitchin's notice of partial mootness. That was filed with this court on August 24th. And if you look at paragraph 115, she says, quote, in the face of these forceful and consistent rulings, consistent rulings, Nitchin persisted appealing Judge Ware's ruling, end quote. She goes on to say later in that paragraph, quote, Nitchin's repeated disregard of clear judicial direction, clear judicial direction to pursue its remedies in the arbitration it invoked rather than in the courts is an abusive process. And that's, again, part of her award to Zekagin of $734,000 in abusive process damages. Let me just ask out of curiosity, did this case go through the Ninth Circuit mediation program? Yes, actually it did. I just wanted to know. Thank you. I see I'm being asked to sum up here, so I think I'd like to end with a few remarks on why we think the merits of this case cannot be decided in a way that is divorced from the context of the five repetitive lawsuits, now six with the sixth action that's been filed in federal court. We think this is improper forum and judge shopping, and we think it's vexatious and abusive of the judicial system, just as arbitrator Abraham found in order, and this was all an attempt to drive up Zekagin's litigation expenses and drive it to financial ruin. As explained in our briefs, Judge Ware invited a sanctions motion against Nitchin when we appeared before him on March 31st at the hearing on the motion to dismiss. And the citations for the transcript are in our brief, but I can give them to you now if you'd like. The transcript sanctions discussions are primarily at pages ER 255 to 256, but you'll see that if you read the entire transcript, Judge Ware raises this issue over and over again about the impropriety of their conduct. Now, notwithstanding Judge Ware's sua sponte warning to Nitchin and the invitation for sanctions, notwithstanding arbitrator Lois Abraham's $734,000 damages award, notwithstanding that Nitchin's lead counsel has previously, as we noted in our mootness briefing, been sanctioned in a published opinion of the California Court of Appeal for improper conduct very similar to this. And in that case, International v. Montrose, they described that conduct as, quote, attempting to win by attrition when escalating expenses threaten all adversaries with financial ruin, end quote. That's at page 8, we cite that case. Insecution's motion for dismissal of the entire appeal has moot. Now, despite all of this, Nitchin persists. It persists in this appeal, which we believe is frivolous. It persists. Have you identified it as frivolous in your brief and asked for sanctions under Rule 38 or anything similar? I'm sorry? Have you asked for sanctions? Not yet. I think we very likely will. We just haven't. Do you have to do that in your brief under Rule 38? We indicate in our brief that we will be asking for sanctions, but I believe we have until a certain number of weeks after the decision of this panel to actually bring the motion. So now we have six. Notwithstanding all of this, Nitchin has persisted in this appeal. It's persisted with what we consider to be gamesmanship on this mootness issue, the picking and choosing on an issue of jurisdiction. Jurisdiction's not based on what you like or don't like. And it's also filed Lawsuit No. 6 now in the Federal Court. Why are all the motions in this case? On the appeal or the, yeah. Well, there's multiple. We're drowning in motions. Yes. Judicial notice and responses to motions. Most of the motions are requests for judicial notice. And. Motions by you, the other side, both of you? They're by both. I can tell you specifically how many are by each side in just a second here. We'd rather have it by the inch than by the number. There's one motion on mootness. And then there are, I believe, five requests for judicial notice. I believe two of the requests for judicial notice are ours and three are Nitchin's, I believe. Do you have anything else you'd like to tell us? Well, I just wanted to conclude on that one point that this continuing pattern, we believe, bears on the merits here because all the doctrines asserted, the mootness, the collateral estoppel, the Anti-Injunction Act, and the Brillhart Doctrine, all of these call for consideration of judicial administration concerns and are intended to prohibit forum shopping, judge shopping, repetitive litigation, waste of the Court's resources. We now have six actions about one controversy. And we respectfully request that the Court not condone this continued abuse of the judicial system and affirm the decision of the district court. Thank you, counsel. They're actually arguing that we've done something wrong by filing a petition to confirm our victory. But in the midst of all the rhetoric, they did not address the inconsistency in the state court order. Ms. Shadid said nothing about it. And it's right there as plain as day on page 167 in the excerpts of record. What they're saying when they make the mootness argument is that we lose our right to review because we won. That's what that boils down to. We preserved our rights. We raised the issue. I don't think they said you lose your right to review. They just said you've got to take the whole ball of wax. Either the whole thing is out or the whole thing is in. That's right, Your Honor. So they didn't say you still would have your choice. We would have that choice, Your Honor. There's not much to it. Now, with respect to a couple of the other points, and then I'll sit down. Ms. Shadid said that we've waived our rights or forfeited our rights because we said there was no basis to vacate. Well, there isn't any basis to vacate on the merits and because they're estopped. That point is not significant. We did seek to confirm what we won on. The words that we used don't make a difference. On the Rucker-Feldman point, Judge Shader, the state court order that raises an issue that's identical to the issue before the district court, it wasn't final, it didn't amount to anything, and we are not seeking to overturn it. Whatever it is, it is. And by the way, the complaint in this case was filed before the district court acted. Excuse me, the state court acted, which was February 7th. The complaint in this case was January 29th, and we aren't seeking to have any impact on that. As far as we're concerned, it is a non-final order that doesn't affect anybody's rights in any way. How does your trademark and free speech claims survive the state court's decision as to what was arbitrable and that other issues of arbitrability go to the arbiter? Two points there, Judge Trott. First of all, with respect to the substantive determinations that the court made, they survived because they weren't before the court. There's a suggestion, I think, in what Ms. Shadid just said, that the court said everything under the sun goes to arbitration. The court ruled on specific claims, the embezzlement claim, which we filed because Ms. Shadid's client stole from NCHET, and the collection claim because of the $3 million receivable that was run up when he controlled both companies. What did the arbitrator rule on trademark and free speech? On both claims, Your Honor, with respect to the trademark, despite the arguments that we made, the arbitrator said that the trade ---- Arbitrable. It's arbitrable. And free speech? With respect to that, Your Honor, she did a couple of things. First, we had pointed out, and we cited cases, that arbitrability analysis must go issue by issue. The arbitrator declined even to get to the level of claim by claim. She hit it at a pretty high level, but she did also say those claims were arbitrable. Isn't that consistent with the other side's statement that the state court said, we're going to let the arbitrator decide on these disputed issues whether they're arbitrable or not, and the state and the arbitrator then did, said, oh, these are arbitrable? No, Your Honor. What it's consistent with is what Judge Ware did when he dismissed our complaint, because those counterclaims, those were never before the state court. They were only before the district court. When Judge Ware dismissed our complaint, then that's when we went to arbitration on those claims. We had no choice at that point. He clearly did make a ruling that required us, if we wanted to contest the issue, to do it before the arbitrator. It's not connected to the state court. Thank you, counsel. Thank you, Your Honor. And we'll be in recess until tomorrow morning at 9 o'clock. Thank you.
judges: Trott, McKeown, Shadur